IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY L. WISEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:10-cv-282-TFM |
| MICHAEL J. ASTRUE, | ) | [wo] |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., Tammy L. Wiseman ("Wiseman") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review the decision became the final decision of the Commissioner of Social Security ("Commissioner").   Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

### I. NATURE OF THE CASE

Wiseman requests judicial review of the Commissioner's decision denying her application for disability insurance benefits.  United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law

and are supported by substantial evidence.  42 U.S.C. § 405.  The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II.  STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ'd opinion is supported by substantial evidence and whether the proper legal standards were applied.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272,

1275 (11th Cir. 2003). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "it must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The district court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[1]

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other

---

[2] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[3] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Wiseman, age 49 at the time of the hearing, completed the eleventh grade.[4] Wiseman has past relevant work as a flagger (unskilled, light); auto parts clerk (semi-skilled, heavy); bus driver (semi-skilled, medium).[5] Wiseman has not engaged in substantial gainful work activity since her alleged disability onset date of June 2, 2005.[6] Wiseman claims she is unable to work because of neck, back, shoulder and hip pain.[7] Wiseman rates her pain on a bad day as level nine on a ten point scale and level five on a ten point scale most days with ten being the highest level of pain.[8]

---

[3] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.
[4] Tr. 35
[5] Tr. 49
[6] Tr. 11
[7] Tr. 32
[8] Tr. 39

Medical records show Wiseman was treated by various medical practitioners and the records from the practitioners were considered by the ALJ.  From the arguments, it is clear that to decide the case at hand, the Court need only concern itself with the records and opinions from two medical practitioners, Dr. Allen Jones, M.D. a treating physician and Dr. Kishore Chivukula, a consulting physician.  Dr. Jones treated Wiseman eight times between August 31, 2006 and July 11, 2008.

On August 31, 2006, Wiseman presented to Dr. Jones with complaints of neck pain.[9] Records from the visit indicate Wiseman told Dr. Jones she had neck pain for two weeks.  After examining Wiseman, Dr. Jones' diagnosis was cervical strain and prescribed Vicodin.

On December 1, 2006, Wiseman told Dr. Jones she had neck and lower back pain.[10] Treatment notes from the visit reveal Wiseman reported daily headaches, lower back pain, and a history of lower back pain stretching back two years.  Dr. Jones prescribed Vicodin and physical therapy for the back and neck pain.

On July 23, 2007, Wiseman saw Dr. Jones because of neck and lower back pain and pain getting out of bed in the morning.[11]  Wiseman also reported intermittent headaches and that the physical therapy which she underwent was not effective.  Dr. Jones prescribed a soft collar, Vicodin, Flexeril and Ultram.

---

[9]Tr. 277
[10]Tr. 275
[11]Tr. 292

On October 29, 2007, Wiseman saw Dr. Jones because she hit her head on a bar in a barn which made her neck pain worse.[12]   Wiseman told Dr. Jones the blow did not knock her out and she was doing more walking but the increased walking made her back hurt more.   Dr. Jones prescribed Vicodin and Flexeril.

On January 21, 2008, Wiseman saw Dr. Jones because she was having headaches again, pain along her sciatic nerve which went down to her left leg, more neck pain, and a crunching sound when she moved her head.[13]   Dr. Jones continued Wiseman on Flexoril, Vicodin, Ultram and Aleve.

On March 31, 2008, Wiseman saw Dr. Jones because she fell on an aereator during the prior week.[14]   As follow up care Dr. Jones cleaned the wound.   Dr. Jones gave Wiseman another prescription for Vicodin to treat her continuing back pain.

On May 15, 2008, Wiseman saw Dr. Jones because of chronic neck and back pain which has been ongoing since a wreck in 2004.   Dr. Jones prescribed Vicodin and Flexoril.

On July 11, 2008, Wiseman saw Katie Sundler, a nurse practictioner in the office of  Dr. Jones because of chronic pain in her neck, back and left shoulder.[15]   Wiseman told Nurse Sundler her pain had increased in the last two weeks and her headaches were more frequent.   Nurse Sundler discontinued the Vicodin prescription and continued the Flexeril.

---

[12]Tr. 294
[13]Tr. 296
[14]Tr. 298
[15]Tr. 300

On January 22, 2009, Dr. Jones completed a physical assessment of Wiseman.[16] Dr Jones concluded Wiseman could lift or carry 1 to 5 pounds frequently; sit 2 hours in an 8 hour workday; stand or walk 2 hours in an 8 hour work day; never engage in pushing and pulling movement; never climb stair or ladders or balance; never bend over or make stooping movements; never operate a motor vehicle; never work with or around hazardous machinery; rarely engage in reaching activities; and would likely be absent from work more than four times per month because of her chronic neck, back and shoulder pain.[17]  Dr. Jones indicated that 1) Wiseman has pain to such an extent as to be distracting to adequate performance of daily activities; 2) physical activities such as walking etc will greatly increase pain to such a degree as to cause distraction from tasks or total abandonment of the task; and 3) drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc.[18]

On August 15, 2008, Krishna Chivukula, M.D. performed a consultative neurological examintion of Wiseman.[19]  Dr. Chivukula took a detailed history from Wiseman which reveals that Wiseman complains of back and neck pain which she attributes to an accident where she was a belted passenger in a pickup truck which was rear ended and resulted in minimal bumper damage.  Wiseman went to urgent care the day after the wreck.  An MRI of her spine and other imaging studies reveal normal results.  After a full examination, Dr. Chivukula came to conclusions in almost diametric

[16]Tr. 310
[17]Tr.  309
[18]Tr.   309
[19]Tr. 16, 279

opposition to the conclusions of Dr. Jones.  Dr. Chivukula found Wiseman can stand 4 to 5 hours in an 8 hour day; walk 4-6 hours in an 8 hour day; sit without limit in an 8 hour day; lift 15 pounds constantly; carry 15 pounds constantly; constantly engage in pushing and pulling movement with each limb; constantly engage in reching movements; and occasionally climb, balance, stoop and kneel. [20]

## V.  ISSUES

Wiseman raises two issues for judicial review:

(1) Whether the ALJ correctly disregarded the opinion from the treating physician;

(2) Whether the ALJ correctly applied the Eleventh Circuit pain standard;

## VI.  DISCUSSION

### A.    The ALJ correctly disregarded the opinion from the treating physician

Wiseman argues that the ALJ disregarded the opinion of a treating physician, Dr. Jones and improperly relied instead upon the opinion of the consultative examiner, Dr. Chivukula.  Each party and the Court agrees that Dr. Jones was a treating physician.  Both parties and the Court also agree the opinion of a treating physician should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.    20 C.F.R. §404.1527(d)(2).  The Commissioner accords such great weight to the opinion from a treating source because treating physicians are likely the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairments.  20 C.F.R. §404.1527(d)(2).  As Dr. Jones was a treating

---

[20]Tr. 16. 279

source, the only question which remains is whether his opinion is supported by acceptable clinical and laboratory diagnostic techniques and consistent with the evidence.  If so, Wisemen met her burden of proof and is entitled to benefits under the Act.  For the reasons stated hereafter, the Court finds the ALJ properly rejected the opinion of Dr. Jones.

First, the treatment records from Dr. Jones reveal no clinical or laboratory tests which confirm that Wiseman is indeed unable to perform the tasks indicated in his January 22, 2009 assessment.  In sum, the medical records from Dr. Jones reveal that other than self reports from Wiseman that she suffers from pain there is no diagnostic image reports which confirms a condition which would generate severe enough pain to undergird the January 22, 2009 assessment from Dr. Jones.  The ALJ noted the lack of records or evidence in his reasons to disregard the opinion from Dr. Jones.[21]  In fact, prior to his January 22, 2009 assessment, Dr. Jones examined Wiseman eight times.  Dr. Jones never indicated on any records that Wiseman should be restricted from any work activities or daily living activities such as driving, bending, pushing, or carrying.  In fact, Wiseman told the ALJ that she could drive and perform normal daily living activities.  As part of her daily life activities, Wiseman provides care for her disabled husband.[22]

Next, the objective reports from Dr. Chivukula revealed normal muscle bulk in all the major muscle groups and normal power in all the major muscle groups.[23]  Dr. Chivukula found Wiseman had relatively normal function and use of her body to engage

---

[21]Tr. 24.
[22]Tr. 129-134, 145-149, 309-310.
[23]Tr. 281.

in work based upon his discussion with Wiseman and the objective evidence he could find.

Finally, the ALJ had ample reason from the information supplied by Wiseman to Dr. Chivukula to disregard the opinion from Dr. Jones. Wiseman described a very minor traffic accident in 2004 as the genesis of her shoulder and back pain. Wiseman did not sustain a broken bone or head inury from the accident nor did she visit the emergency room because of the accident. In fact, Wiseman did not seek any treatment until the day after the accident. According to Wiseman, imaging studies done the next day after the accident were normal and she continued to work - albeit that she began an office job in December 2006 and continued to hold that job until June 2007. Obviously, to the extent Wiseman was injured in the wreck, the resultant injuries did not preclude her from employment. A condition which was not disabling during working years cannot be used to prove present disability. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990). Further no physician, other than Dr. Jones, came to conclude Wiseman is disabled or has severe enough symptoms from which the Commissioner might conclude Wiseman is disabled. The lack of such evidence is a significant factor which the ALJ may consider to conclude a claimant is not disabled. *See Cartwright v, Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984).

The Court holds that the ALJ had and set forth sufficient medical evidence to disregard the opinion of Dr. Jones and to accept the opinion of Dr. Chivukula.

**B.      The ALJ correctly applied the Eleventh Circuit pain standard.**

Wiseman argues the ALJ misapplied the Eleventh Circuit's pain standard to her testimony about subjective pain and limitations. In a nutshell, Wiseman argues the treatment record is consistent with her allegations of disabling pain.  The Commissioner responds that the ALJ followed the correct steps to evaluate testimony of subjective pain and limitations, but simply did not find the testimony credible.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled.  20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The Eleventh Circuit has set forth criteria to establish a disability based on testimony about pain and other symptoms.  It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.   If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.   Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225  (11th Cir. 2002) (citations omitted).   A "claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Brown*, 921 F.2d at 1236. "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence."  *Foote*, 67 F.3d at 1561.  An ALJ must explicitly explain why he chose not to credit a claimant's testimony.  *Brown*, 921 F.2d at 1236.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work.  20 C.F.R. § 416.929(a).  "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts."  *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

Under *Wilson*, a claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence.  *Brown*, 921 F.2d at 1236.  An ALJ's credibility findings are an important factor in the application of the pain standard. *Wilson,* 284 F.3d at 1225.  Here, the ALJ found Wiseman has medically determinable impairments which could reasonably be expected to cause the alleged symptoms, but did not find Wiseman credible enough to satisfy the pain standard.  The medical record is consistent with the finding of the ALJ in this respect.

No objective medical tests or laboratory tests were in the record before the ALJ to corroborate pain which is sufficient to render Wiseman unable to work.  The Court agrees with the ALJ that the  most reliable assessment of the effects of pain upon Wiseman and her ability to work was the assessment done by Dr. Chivukula.  Indeed, the records from Dr. Jones- the evidence most helpful to Wiseman, gave the ALJ several reasons to reject the testimony from Wiseman about the effects of pain upon her.

First, the records submitted by Wiseman indicates she first saw Dr. Jones for her allegedly disabling pain almost 2 years after the minor traffic accident which is the genesis of her pain.  Between the accident and her first visit to Dr. Jones, Wiseman held a

job.   The delay in treatment and her employment are inconsistent with disability.

Next, after Wiseman began a treatment relationship with Dr. Jones, her time between visits varied from 2 to 4 months. Two of her eight visits with Dr. Jones were spawned by minor household injuries and there is no indication that but for those minor injuries that Wiseman would have sought treatment from Dr. Jones.  None of the notes from the eight visits contain any entries that limit Wiseman from engaging in any activities or employment because of pain.  In fact, the last visit Wiseman paid to Dr. Jones because of pain was nearly 6 months before Dr. Jones conducted his examination and reported his findings that Wiseman is unable to work because of her physical condition.

Finally, to the extent Wiseman suffers from pain, the only proof of her pain are her reports of pain to her physician.  Testimony from a claimant alone is not conclusive evidence of disability.  *See Macia v. Bowen*, 829 F. 2d 1009, 1011 (11th Cir. 1987). Regulations at 20 C.F.R. § 404.1529(c)(4) permit an ALJ to consider inconsistencies or conflicts between a claimant's statements and other evidence.  *Osborn v. Barnhart*, 194 Fed. Appx. 654, 664-65 (11th Cir. 2006).

The Court finds the record provides substantial evidence for the ALJ's credibility findings, and consequently, there is no error in the ALJ's determination that Wiseman's testimony alone or in combination with other evidence in the record does not establish disability.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 21st day of April, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE